# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| DELLA SHAW, SHERLYNE TURNER, BERTHA JOHNSON, and MARY RAND, <br><br> Plaintiffs, <br><br> v. <br><br> CHEROKEE MEADOWS, LP; CARLAND GROUP, LLC; REDBUD CONTRACTORS, LLC; CARLAND PROPERTIES, LLC; and BLACKLEDGE & ASSOCIATES, <br><br> Defendants. | Case No. 17-CV-610-GKF-JFJ |
| CHEROKEE MEADOWS, LP and CARLAND GROUP, LLC, <br><br> Third-Party Plaintiffs, <br><br> v. <br><br> CRAFTON TULL & ASSOCIATES, INC., <br><br> Third-Party Defendant. | |

## OPINION AND ORDER

This matter comes before the court on the Motion for Summary Judgment [Doc. 98] of third-party defendant Crafton Tull & Associates, Inc. For the reasons set forth below, the motion is denied.

I. **Background and Procedural History**

This case arises from alleged violations of the Fair Housing Act ("FHA"), Americans with Disabilities Act ("ADA"), Rehabilitation Act, and Uniform Federal Accessibility Standards ("UFAS") at the Cherokee Meadows Apartments. Cherokee Meadows Apartments is a forty-eight

(48) unit multi-family, affordable housing community (the "Community") for persons aged sixty-two or older developed in 2016 by Carland Group, LLC and owned by Cherokee Meadows, LP. Plaintiffs are tenants of Cherokee Meadows Apartments who allege that the Community includes artificial barriers that exclude persons with disabilities and do not comply with federal statutes.

The Complaint asserts the following claims against defendants: (1) failure to design and construct the public use and common use portions of the Community in a readily accessible and usable manner to handicapped persons in violation of the Fair Housing Act, 42 U.S.C. § 3604(f)(3)(C); (2) discrimination based on handicap in violation of the Fair Housing Act ("FHA"), 42 U.S.C. § 3604(f); (3) violation of section 504 of the Rehabilitation Act, 29 U.S.C. § 794; (4) discrimination in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12132 by designing, constructing, and maintaining housing that is not accessible to persons with disabilities; and (5) breach of contract.

Defendants Carland Group, LLC and Cherokee Meadows, LP subsequently filed a Third-Party Complaint against Crafton Tull & Associates, Inc., the company that performed civil engineering and design services at the Community. [Doc. 14]. Therein, the third-party plaintiffs allege that "[t]he design features which form the basis of Plaintiffs' claims were specified and/or approved in part by Crafton [Tull]" and therefore third-party plaintiffs assert a contingent claim for contribution, among others, against Crafton Tull. [*Id.* at p. 3]. Crafton Tull now seeks summary judgment as to the Third-Party Complaint. *See* [Doc. 98]. Third-party plaintiffs Carland Group, LLC and Cherokee Meadows, LP filed a response [Doc. 118], as did plaintiffs Della Shaw, Sherlyne Turner, Bertha Johnson, and Mary Rand. [Doc. 123]. Crafton Tull did not file a reply and therefore the motion is ripe for the court's review.

## II. Summary Judgment Standard

Pursuant to Federal Rule of Civil Procedure 56(a), "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). A dispute is "genuine" "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* "Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* Further, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986).

In considering a motion for summary judgment, "[t]he evidence and reasonable inferences drawn from the evidence are viewed in the light most favorable to the nonmoving party." *Stover v. Martinez,* 382 F.3d 1064, 1070 (10th Cir. 2004). "A 'judge's function' at summary judgment is not 'to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.'" *Tolan v. Cotton*, 134 S. Ct. 1861, 1866 (2014) (quoting *Anderson,* 477 U.S. at 249). Summary judgment is appropriate only "where 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Stover,* 382 F.3d at 1070 (quoting FED. R. CIV. P. 56(c)).

## III. Summary Judgment Analysis

Crafton Tull seeks summary judgment based on three propositions: (1) plaintiffs have no evidence of breach of the standard of care; (2) plaintiffs' injuries were due to intervening causes

or their own negligence; and (3) Carland accepted Crafton Tull's work. The court separately considers each proposition.

## A. *Evidence of Breach of Standard of Care*

Crafton Tull first argues it is entitled to summary judgment because expert testimony is required to establish that Crafton Tull breached its professional standard of care in performing engineering and design services at the Community. Plaintiffs offer no expert evidence or testimony specifically directed to Crafton Tull's civil engineering design and therefore Crafton Tull contends that plaintiffs cannot prove there was a defect or deficiency in its work.

Under Oklahoma law, "[t]he general rule is expert testimony is ordinarily necessary to establish causation in professional liability cases." *Boxberger v. Martin*, 552 P.2d 370, 373 (Okla. 1976) (internal footnote omitted). However, "when a [professional's] lack of care has been such as to require only common knowledge and experience to understand and judge it, expert . . . testimony is not required to establish that care." *Id.*

Plaintiffs' accessibility compliance expert, Mariesha A. Blazik, opined that the Community's exterior accessible route was not compliant with federal accessibility standards due to a lack of curb ramps and lack of connecting accessible routes throughout the property. [Doc. 123-3, p. 12]. Thus, residents were required to travel significant distances to reach common use amenities prior to remediation of the mountable curbs.[1] [*Id.*]. As discussed by the court in its December 30, 2019 order on defendant Blackledge & Associates's motion for summary judgment [Doc. 160], a genuine dispute of fact exists as to the party (Blackledge or Crafton Tull) that

---

[1] Although Crafton Tull contends that Blazik is prohibited from opining as to the standard of care owed by Crafton Tull or whether Crafton Tull's design complied with federal accessibility requirements [Doc. 109], Crafton Tull does not challenge Blazik's qualifications to testify regarding the requirements of the FHA, UFAS, or ADA.

assumed responsibility for the placement or general location of the sidewalks and exterior accessible route. Further, as discussed in the Doc. 160, identifying the location of sidewalks and the exterior access route in the design drawings falls within the scope of the common knowledge and experience of a lay juror and therefore expert testimony is not required.

Nor is expert testimony required with respect to the installation of the mountable curbs and curb ramps. As to the mountable curbs and ramps, Blazik opined as follows:

> The property is configured with the apartment buildings located on both sides of the vehicular property drive, and the vehicular drive has a continuous and uninterrupted vehicle "steep" curb along both sides of the vehicle drive. There are no curb ramps at either side of the vehicular property drive between the residential buildings. The only existing curb ramps are located on each "far" end of the property at the corner of the public street or at the Community Building and Recycle area (both at ends of property). This means that residents are required to travel either across the 6-inch high vehicle curb in order to reach common use amenities, or travel a significant distance along the main walkway at the property in order to reach common use amenities.

[Doc. 123-3, p. 12]. Blazik further opined that the 6-inch vehicle curb prohibited a compliant connecting accessible route between the unit primary entry doors and the unit mailboxes. [*Id.*]. Although Blazik's opinions relate to the Community as constructed, a juror need not rely on scientific, technical, or other specialized knowledge to identify the location and placement of mountable curbs and curb ramps on Crafton Tull's design drawings. Rather, the drawings include a "Site Plan Details" key that designates the 6" mountable curb as Detail "A" and accessible ramps as Detail "Y." [Doc. 98-2, p. 5; *see also id.* at pp. 7-8 (6" mountable curbs as Detail "E")]. Thus, the lack of expert testimony specifically directed to Crafton Tull's civil engineering design does not require summary judgment in Crafton Tull's favor.

Finally, the court notes that Crafton Tull does not submit expert testimony in support of its contention that its plans complied with applicable federal accessibility standards. Although Crafton Tull submits evidence that that the City of Tulsa approved the plans, it has not been

established that the City of Tulsa incorporated the federal requirements into its building codes and ordinances. As previously recognized by this court, a movant contending that a nonmovant lacks essential evidence must present more than conclusory assertions, and "because the rule explicitly requires a 'showing,' there must be at least enough evidentiary support for the assertion that the nonmovant lacks crucial evidence to demonstrate the movant's good faith." 11 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE § 56.40[1][b] (3d ed. 2019) (internal footnote omitted).

A genuine dispute of material fact exists as to whether Crafton Tull assumed responsibility for placement of the sidewalks and exterior accessible route at the Community and, further, whether that placement, as well as the design calling for 6" mountable curbs, complied with applicable accessibility standards. Therefore, to the extent liability is imposed on Cherokee Meadows, LP and Carland Group, LLC for these design issues, third-party defendants may be entitled to contribution from Crafton Tull. Thus, Crafton Tull is not entitled to summary judgment.

### B.     *Intervening Cause or Contributory Negligence*

Next, Crafton Tull contends it is entitled to summary judgment because plaintiffs' injuries were due to intervening causes or their own negligence, rather than Crafton Tull's acts or omissions. Crafton Tull's contention does not warrant summary judgment for two reasons.

First, Crafton Tull's motion is limited to a discussion of plaintiffs' claims for physical injuries or property damage. However, plaintiffs' requested damages are not so limited, and include emotional distress damages, punitive damages, and other damages associated with the alleged noncompliance with the FHA, ADA, and Rehabilitation Act.

Second, as a general rule, proximate cause is a question of fact for the jury. *Bannister v. Town of Noble,* 812 F.2d 1265, 1267 (10th Cir. 1987). "[T]he proximate cause of an injury is a

question of fact and only becomes a question of law where the evidence together with all inferences which may be properly deduced therefrom is insufficient to show a causal connection between the alleged wrong and the injury." *Id.* (quoting *Gates v. United States*, 707 F.2d 1141, 1145 (10th Cir. 1983)). The court has reviewed the evidence submitted on summary judgment and, viewing the evidence in the light most favorable to nonmovants, a genuine dispute of fact exists as to the cause of plaintiffs' alleged injuries.

For these reasons, Crafton Tull is not entitled to summary judgment based on causation.

C. *Acceptance of Crafton Tull's Work*

Finally, Crafton Tull asserts it is entitled to summary judgment based on the "accepted work doctrine." In the nineteenth century, the "accepted work doctrine" "relieved an independent contractor of liability for injuries to third parties after the contractor had completed the work, and the owner or employer had accepted the work, regardless of the contractor's negligence in completing the project." *Pickens v. Tulsa Metro. Ministry*, 951 P.2d 1079, 1087 (Okla. 1997). However, since then, courts have "developed several now firmly established exceptions" to the doctrine. *Id.* at 1088. One such exception under this "modified" accepted work doctrine exists "where a nuisance has been created, or where the product of the contractor's work is inherently or imminently dangerous."[2] *Id.* That is,

> where the contractor has wilfully created a condition which he knows, or by the exercise of ordinary diligence should have known, to be immediately and certainly dangerous to persons other than the contractee, who will be necessarily exposed to such danger, considerations of public policy do not require the application of the general rule.

---

[2] In *Pickens*, the Oklahoma Supreme Court stated it was "unnecessary for [the court] to decide today whether the accepted work doctrine has outlived its usefulness," and affirmed summary judgment on other grounds rather than applying the doctrine. *Pickens*, 951 P.2d at 1089.

*Creamer v. Bucy,* 700 P.2d 668, 670-71 (Okla. Civ. App. 1985) (quoting *Schlender v. Andy Jansen Co.*, 380 P.2d 523, 524 (Okla. 1962)); *see also Greenwood v. Lyles & Buckner, Inc.,* 329 P.2d 1063, 1065 (Okla. 1958) (recognizing that a contractor's liability may extend beyond acceptance of the work "where the contractor knew that the defective condition of the structure was such as to make it immediately and certainly dangerous to persons other than the contractee who would necessarily be exposed to such danger").

Here, Crafton Tull explicitly contracted with the Carland Group for civil engineering and design services for "[c]onstruction of a Senior Living Complex." [Doc. 98-1, p. 5]. Thus, a reasonable finder of fact could infer that Crafton Tull knew that Community residents would have limited mobility. Further, evidence exists that the Crafton Tull plans called for 6" mountable curbs along the access road in the Community, including at the driveway aprons for each unit. *See* [Doc. 98-2, p. 5]. Plaintiffs present evidence that they feared falling on the driveway curbs, and that those curbs prevented Community residents from "safe access for [them] to simply cross the street and visit neighbors" and rendered access "difficult or impossible." *See, e.g.,* [Doc. 140-2]. Under the circumstances, a genuine dispute of material facts exists as to whether Crafton Tull's design of a senior living community to include 6" mountable curbs at points of ingress or egress was such that Crafton Tull knew or should have known that the design was dangerous. Thus, a genuine dispute of material fact exists as to the applicability of an exception pursuant to the modified accepted work rule and summary judgment is inappropriate on this basis.

## IV. Conclusion

WHEREFORE, Third-Party Defendant Crafton Tull & Associates, Inc.'s Motion for Summary Judgment [Doc. 98] is denied.

DATED this 31st day of December, 2019.

GREGORY K. FRIZZELL
UNITED STATES DISTRICT JUDGE